IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TELFORD BOROUGH AUTHORITY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 12-CV-6548 |
| | : | |
| UNITED STATE ENVIRONMENTAL | : | |
| PROTECTION AGENCY, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

**SITARSKI, M.J.**                                                                                       February 6, 2020

Pending before the Court is Plaintiff's Motion for Leave to file an Amended Complaint (ECF No. 143), Defendants' Response in Opposition thereto (ECF No. 147), Plaintiff's Reply in Support (ECF No. 152), and Defendants' Sur-reply in Opposition (ECF No. 153).[1] For the following reasons, Plaintiff's Motion will be GRANTED as to Counts V, VI, VII, IX, X, and XVII, and DENIED as to Counts VIII and XV.

### I.   PROCEDURAL/FACTUAL BACKGROUND

On November 20, 2012, Telford Borough Authority ("Telford") initiated the instant action against the United States Environmental Protection Agency ("EPA") and its officers, seeking judicial review of the agency's establishment of a total maximum daily load ("TMDL") regulating the amount of certain pollutants, including phosphorous, found in the Indian Creek Watershed.[2] (Compl. ¶ 1, ECF No. 1). Telford asked the Court to vacate the TMDL, alleging

---

[1] The Honorable C. Darnell Jones, II referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (Order, ECF No. 148).

[2] The Clean Water Act requires that water quality standards be established for intrastate waters. 33 U.S.C. § 1313(a)(2), (c)(2). Those water quality standards are then used as a

that the TMDL was created through a flawed scientific process, that regulating phosphorous would not in fact improve the water quality of the Indian Creek stream, and that the EPA therefore acted arbitrarily and capriciously in issuing the TMDL. (*Id.* at ¶¶ 3–8).

On February 8, 2013, EPA filed its answer. (Answer, ECF No. 13). On the same date, EPA also moved to dismiss Counts I & IV of the Complaint.[3] (Motion to Dismiss, ECF No. 12). The Court granted EPA's motion to dismiss Count I with prejudice and denied its motion to dismiss Count IV. (Order, ECF No. 29).

On May 19, 2015, the case was placed in suspense while the parties conducted settlement discussions. (Suspense Order, ECF No. 77). During the suspension period, Telford submitted reconsideration requests, meeting requests, new scientific information, and FOIA requests to EPA regarding the Indian Creek TMDL. (Motion, ECF No. 143, at 3).

In November 2015, Telford submitted an alternative plan for eliminating excessive plant growth, which EPA rejected in 2016. (Motion, ECF No. 143, at 3; Br. in Resp., ECF No. 147, at 5–6). Telford also submitted two requests in 2017 and 2018 that EPA conduct independent peer

---

baseline, and if a body of water does not meet the applicable standard, that body is designated "impaired." *Id.* § 1313(d). Section 303(d) of the Clean Water Act requires that states list impaired waterbodies: "[e]ach state shall identify those waters within its boundaries for which the effluent limitations required by section 1311(b)(1)(A) and section 1311(b)(1)(B) of this title are not stringent enough to implement any water quality standard applicable to such waters." *Id.* § 1313(d)(1)(A). Here, the Indian Creek Watershed was found to be "nutrient-impaired" by phosphorus. Once a waterbody is "impaired" and listed on the states' 303(d) list, a TMDL is established. *Id.* § 1313(d)(1)(C). A TMDL is the maximum amount of a pollutant allowed to enter a body of water to ensure the body will meet and continue to meet water quality standards for that particular pollutant. 40 C.F.R. §§ 130.2(i), 130.7. Telford objects to the phosphorus TMDL for the Indian Creek Watershed.

[3] EPA argued that Count I failed to assert a claim under the Clean Water Act (CWA), which requires EPA to carry out certain mandatory duties. EPA contended that EPA's refusal to reconsider the TMDL did not fall into the category of mandatory duties under the CWA. EPA also argued that Count IV should be dismissed because EPA had not yet made a final decision regarding the reconsideration request on which that Count was based. (Answer, ECF No. 12, at 1–2).

review of a document called *Development of Nutrient Endpoints for the Northern Piedmont Ecoregion of Pennsylvania: TMDL Application – Follow-up Analysis* (2012 Nutrient Endpoint Report), which it used to inform its consideration of Telford's reconsideration requests. (Am. Compl., ECF No. 143, Exhibit A, at ¶¶ 370-379; Br. in Resp., ECF No. 147 at 4). EPA refused both peer review requests. (Br. in Resp., ECF No. 147 at 4). In 2019, Telford also requested a meeting with EPA's Municipal Ombudsmen and the Assistant Administrator for Water to discuss the TMDL, which EPA refused. (Am. Compl. at ¶¶ 391–98; Br. in Resp., ECF No. 147 at 4).

In January 2019, Telford submitted a letter containing a request for reconsideration of the TMDL to EPA. (Motion, ECF No. 143, at 3; Br. in Resp., ECF No. 147, at 3). At a status conference on July 24, 2019, EPA counsel represented that she believed EPA had denied all of Telford's reconsideration requests. (Letter, ECF No. 146). Counsel later filed a letter with the Court correcting this misstatement. (*Id.*). EPA contends that it in fact has taken no final action on Telford's 2019 reconsideration request. (Br. in Resp., ECF No. 147, at 3–4).

On March 6, 2019, EPA filed a motion to return the case to active status, explaining that it did not believe further settlement discussions would be productive. (Motion, ECF No. 129, at 1). Accordingly, by Order dated July 29, 2019, the Honorable C. Darnell Jones II removed the case from suspense and ordered that "if Plaintiff would like to amend its Complaint, Plaintiff shall file a Motion for Leave to File an Amended Complaint, with the proposed amendment attached thereto, on or before August 26, 2019." (Order to Remove from Suspense, ECF No. 142).

On August 23, 2019, Telford filed the instant Motion seeking leave to amend its complaint. (Motion, ECF No. 143). On September 23, 2019, EPA filed its Response in

Opposition. (Br. in Resp., ECF No. 147). Telford filed its Reply in Support on October 8, 2019. (Pl.'s Reply, ECF No. 152). EPA filed its Sur-reply in Opposition to Plaintiff's Motion on October 18, 2019. (ECF No. 153).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) sets out the standard for granting leave to amend an answer when, as is the case here, a responsive pleading has been served: "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires," and the Third Circuit has held that "motions to amend pleadings should be liberally granted." Fed. R. Civ. P. 15(a)(2); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). The fundamental purpose of Rule 15 is to give a party the opportunity to test its claim on the merits. *United States ex rel Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016).

"Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maerski, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur*, 434 F.3d at 204; *see also Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Given the liberal standard of Rule 15(a), the party opposing amendment bears the burden of showing undue delay, bad faith, prejudice, or futility. *Cureton*, 252 F.3d at 273. The decision to grant or deny a motion for leave to amend is within the sound discretion of the district court. *Id.* at 272.

## III. ANALYSIS

Telford seeks leave to amend its Complaint. (Motion, ECF No. 143). In its proposed Amended Complaint, Telford brings seventeen counts against Defendants. (*Id.* at Ex. A, ECF No. 143-1). EPA responds that leave to amend should be denied for eight of the seventeen counts. (Br. in Resp., ECF No. 147, at 1-10). Specifically, EPA argues that leave to amend for Telford's proposed Counts V, VI, VII, VIII, IX, X, XV, and XVII should be denied because those claims are "futile."[4] (*See id.*). I will address the arguments in turn. For the following reasons, I conclude that proposed Counts V, VI, VII, IX, X, and XVII are not so futile as to require denial of leave to amend, and therefore will grant Telford leave to amend its complaint to add these counts. I also conclude that proposed Count VIII does not state a cognizable claim for relief under § 553 of the APA, and that amendment of the complaint to include this count would

---

[4] EPA also argues that Counts IX and X of Telford's proposed Amended Complaint, as well as paragraphs 12.c, 12.d, 267, 287-290, 368, 387-389, and 392-398, should be stricken because they disclose the content of settlement discussions between the parties. (Br. in Resp., ECF No. 147, at 6, 10). EPA thus argues that, under Fed. R. Evid. 408(a), these allegations cannot be used "to prove or disprove the validity … of a disputed claim." In reply, Telford contends that the allegations to which EPA refers do not in fact disclose the content of settlement negotiations, and that the only reference to settlement negotiations comes from EPA's own Reply to Telford's Amended Complaint. (Pl.'s Reply, ECF No. 152 at 12–13).

The purpose of Rule 408 is to protect freedom of discussion during negotiations and thereby encourage settlements among the parties. *Ciolli v. Iravani*, 625 F.Supp.2d 276, 285 (E.D. Pa. 2009) (citing *Agnew v. Aydin Corp.*, No. 88–3436, 1988 WL 92872, at *3 (E.D. Pa. Sept. 6, 1988)). EPA's claim that Telford submitted its requests for an alternative watershed plan and for a meeting with EPA's Municipal Ombudsmen outside settlement discussions only after first making them *during* settlement discussions misses the fundamental point of Rule 408—to protect confidential settlement discussions from disclosure at trial. As both parties have acknowledged, the alternative watershed plan and requests for meetings have already been submitted to EPA outside of the settlement discussion context, so they are no longer confidential.

The Court therefore finds that EPA will not be unfairly prejudiced by the inclusion of the contested allegations in Telford's Amended Complaint.

be futile. I further find proposed Count XV to be merely duplicative of Count XVIII, and will therefore deny leave to amend to add this count.

### A. Futility

EPA argues that Telford's Motion should be denied with respect to proposed Counts V, VI, VII, IX, and X because these counts do not present a reviewable claim for relief under the Administrative Procedure Act (APA). 5 U.S.C. § 704; (Br. in Resp., ECF No. 147, at 2). EPA also contends that proposed Count VIII does not state a claim for relief because the complained-of conduct does not violate the APA. (*Id.* at 7). EPA further argues that proposed Count XV does not state a claim for relief under the Equal Protection clause, and that proposed Count XVII does not state an adequate due process claim under the Fifth Amendment. (*Id.* at 8–10). Thus, EPA contends that these proposed counts should be denied because amendment would be futile.

A motion for leave to amend may be denied for undue delay, bad faith, dilatory motive, prejudice, or futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Id.*; *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In assessing futility, the Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Shane*, 213 F.3d at 115; *In re Digital Island Sec. Litig.*, 357 F.3d 322, 337 (3d Cir. 2004). Therefore, the Court will take the factual allegations of the proposed amended complaint as true, draw all reasonable inferences in favor of the plaintiff, and deny the motion to amend only if the factual allegations in the complaint do not raise plausible claims and are not sufficient "to raise a right to relief above the speculative level." *Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F.Supp.2d 635, 639 (E.D. Pa. 2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

### B. Final Agency Action

APA § 704 provides that only "final agency action" may be subject to judicial review. 5 U.S.C. § 704. An agency action is considered "final" if it: (1) marks the consummation of the agency's decision-making process and is thus not of a merely tentative or interlocutory nature; and (2) is an action by which rights or obligations have been determined or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The Third Circuit also considers five additional factors in determining finality: (1) whether the decision represents the agency's definitive position on the question; (2) whether the decision has the status of law with the expectation of immediate compliance; (3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; (4) whether the decision involves a pure question of law that does not require further factual development; and (5) whether immediate judicial review would speed enforcement of the relevant act. *Delaware Dept. of Natural Resources and Environmental Control v. EPA*, 746 F. App'x 131, 134–135 (3d Cir. 2018) (citing *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 n.7 (3d Cir. 2003)); *Ocean Cty. Landfill Corp. v. EPA*, 631 F.3d 652 (3d Cir. 2011).

#### 1. Count V

In Telford's proposed Amended Count V, it alleges that EPA denied its 2019 request for reconsideration of the TMDL, and that this denial was arbitrary and capricious and constituted an abuse of discretion by the agency. (Am. Compl. at ¶¶ 365–369). EPA argues that it did not in fact deny Telford's 2019 request, and that therefore it has not taken reviewable final agency action on the matter. (Br. in Resp., ECF No. 147, at 3).

The question of the possible futility of this amendment depends entirely upon whether EPA did in fact deny Telford's 2019 Reconsideration Request—otherwise, there is no agency

action to review. In its Reply, Telford requests that the parties be allowed to engage in limited discovery to determine if EPA in fact denied Telford's 2019 request. (Pl.'s Reply, ECF No. 152, at 3). The Third Circuit has "held consistently that leave to amend should be granted freely. This approach ensure that a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) (internal citations omitted). Given that considerable debate still exists as to this factual issue, the Court cannot conclude amendment would be futile due to the lack of factual development regarding whether a final agency action occurred. *Cf. RNC Sys., Inc. v. MTG Holdings, LLC*, No. 15-5239, 2017 WL 1135222, at *5 n.3 (D.N.J. Mar. 27, 2017) (allowing leave to amend and reasoning that "[n]or would this amendment be futile" because "there are factual disputes about whether the criteria [are met]."). This claim may benefit from further factual development, and on this record is not plainly futile.

Accordingly, given the liberal standard of Rule 15 and the approach of favoring resolutions of claims on the merits, leave to amend the complaint to include Count V is granted. *Cf. Celgene Corp v. Cyclacel Pharms., Inc.*, No. 10-348, 2013 WL 12147602, at *1 n.1 (D. Del. Jan. 11, 2013) (granting leave to amend and observing "futility arguments generally should be rejected 'if they present substantive disputes, either of the law or of the facts' and that 'the substantive merits of allegations made in [] an amended complaint . . . should be tested through a substantive motion (pursuant to e.g., Rules 12(b)(6) or 56), not a procedural one.'").

### 2. Counts VI, VII, IX, & X

In Telford's proposed Amended Counts VI and VII, it asserts that EPA's denials of its 2017 and 2018 requests to conduct independent peer review of the 2012 Nutrient Endpoint Report were arbitrary, capricious, and an abuse of discretion in violation of APA § 706(2)(A).

8

(Am. Compl. ¶¶ 371–379). In proposed Count IX, Telford claims that EPA's denial of its 2018 request to allow an "Alternative Watershed Restoration Plan" was arbitrary, capricious, and an abuse of discretion. (Am. Compl. ¶¶ 386–390). Finally, in proposed Count X, Telford contends that EPA's denial of its 2019 request for a meeting with EPA's Municipal Ombudsmen and the Assistant Administrator for Water was arbitrary, capricious, and an abuse of discretion. (Am. Compl. ¶¶ 392–398).

EPA responds to these proposed counts by arguing that its refusal to conduct independent peer review, refusal to allow Telford's Alternative Watershed plan, and denial of Telford's meeting request were not final agency actions, and therefore do not state a claim for relief under the APA. (Br. in Resp., ECF No. 147, at 4). Specifically, EPA argues that its refusal to conduct independent peer review, refusal to allow Telford's Alternative Watershed plan, and denial of Telford's meeting request were not final agency actions within the meaning of the APA because they did not have any legal consequences for Telford, or determine any of its rights or obligations. (Br. in Resp., ECF No. 147, at 5). Telford contends these actions did have legal consequences, arguing that EPA was required to base its TMDL decision on the 2012 Nutrient Endpoint Report, and that if EPA had allowed Telford to use its alternative plan or granted Telford's request to meet, this litigation would not be necessary. (Pl.'s Reply, ECF No. 152, at 3–8). Telford has also asked for limited jurisdictional discovery to resolve this issue. (*Id.* at 3).

Given the liberal standard of Rule 15(a), I find that EPA has not met its burden of proving that Telford's claims are so futile as to justify denying leave to amend. *See, e.g.*, *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012) ("If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." (emphasis in original) (internal citation omitted)). After thorough research, the Court has not found case law that speaks directly to the

9

exact agency actions alleged here. Both parties continue to vigorously dispute the finality of the actions at issue. These claims are not so futile as to warrant denial, and the claims may benefit from further factual development. "Rule 15 futility does not contemplate substantive motion practice on the merits of the claims." *Rosenzweig v. Transworld Sys., Inc.*, No. 16-227, 2016 WL 5106995, at *2 (D.N.J. Sept. 20, 2016) (granting leave to amend and finding claims not futile because, *inter alia,* "[t]he dispute raises questions . . . that exceed the limited analysis that applies to a Rule 15 motion to amend. In addition, it may include a factual dispute."). Telford should be given the opportunity to test the merits of these claims, and the EPA may substantively defend against these claims in an appropriate manner at a later date. *See Dole*, 921 F.2d at 486-87.

The Court therefore finds that Telford's proposed Counts VI, VII, IX, and X are not so futile as to warrant denial of leave to amend. Accordingly, leave to amend the complaint to include Counts VI, VII, IX, and X is granted.

### 3. Count VIII

In Telford's proposed Amended Count VIII, it contends that EPA violated APA § 553 by failing to hold a notice and comment period for the 2012 Nutrient Endpoint Report. (Am. Compl. ¶¶ 381–384). EPA counters that the Report was not a rule that required notice and comment, and that therefore Telford has failed to state a claim under the APA. (Br. in Resp., ECF No. 147, at 7).

Under APA § 553, an agency must give interested parties notice of any proposed rule and provide them with the opportunity to "participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(c). A "rule" is defined as "the whole or part of an agency statement of general or particular

applicability and future effect designed to implement, interpret, or prescribe law or policy…" *Id.* § 551(4).

In this case, Telford does not contend that the 2012 Nutrient Endpoint Report itself constitutes a "rule." Rather, Telford asserts that, because the Report formed the scientific basis of EPA's decision to uphold the 2008 TMDL, it should have been submitted to the public for comment. (Pl.'s Reply, ECF No. 152, at 8–9). However, even in that case, it is either the 2008 TMDL or "future regulatory decisions" based on the Report that constitute the rule at issue, not the Report itself. The scientific basis underlying an agency's decision to enact a new rule is not itself a rule under APA § 551(4) if it does not implement law or policy or affect agency procedure. The 2012 Nutrient Endpoint Report simply is not a "rule" that triggers the notice-and-comment rulemaking procedures of § 553(c). Because the law on this point is clear, and Telford does not dispute that the Report on its own is not a rule, this count does not set forth a valid claim under § 553, nor would further discovery prove helpful.

Therefore, the Court finds that amendment of Telford's complaint to include proposed Count VIII would be futile. Accordingly, leave to amend the complaint to include Count VIII is denied.

### 4. Count XV

In Telford's proposed Amended Count XV, it asserts an Equal Protection claim against EPA, alleging that EPA denied it equal protection by treating it differently from other entities similarly situated without rational basis. (Am. Compl. ¶¶ 426–433). After EPA responded to Telford's Amended Complaint by arguing that the Fourteenth Amendment does not create a cause of action against federal agencies and officers, Telford in its Reply requested that the phrase "Fourteenth Amendment" be struck from its Amended Complaint and replaced with

"Fifth Amendment." (Pl.'s Reply, ECF No. 152, at 9–10). EPA argues that this revision still fails to set forth a valid § 1983 claim because that section applies only to state actors. (Sur-reply, ECF No. 153, at 7). EPA also argues that Telford's Fifth Amendment claim would be futile because Telford has not pleaded facts showing that similar *persons* were treated differently by EPA, only that similar *systems* were treated differently. (*Id.*).

Here, Telford seeks to convert its Fourteenth Amendment Equal Protection claim into a due process claim under the Fifth Amendment. Telford also asserts a Fifth Amendment due process claim regarding the same EPA actions in Count XVII. Therefore, by changing the Equal Protection claim to a due process claim, this count becomes identical to, and duplicative of, Count XVII.

The Court has authority to dismiss duplicative claims on motion to dismiss or summary judgment. *See Brown & Brown, Inc. v. Cola*, 745 F.Supp.2d 588, 626 (E.D. Pa. 2010) (recognizing authority of court to dismiss duplicative claims); *Giannone v. Ayne Inst.*, 290 F.Supp.2d 553, 566 (E.D. Pa. 2003); *Cada v. East Penn Manufacturing Company, Inc.*, 2018 WL 947930, at *9 (E.D. Pa. 2018). Therefore, duplicative counts would be considered futile in a motion for leave to amend, which uses the same standard as Rule 12(b)(6). *Cf. Shane*, 213 F.3d at 115. When two counts contain essentially the same allegations, they may be consolidated, with one count being dismissed. *Cada*, 2018 WL 947930, at *9.

Accordingly, leave to amend to add proposed Count XV to the complaint is denied because it is duplicative of proposed Count XVII.

     5.     **Count XVII**

Finally, in Telford's proposed Amended Count XVII, it avers that EPA violated due process by exhibiting a pattern and practice of agency bias against it. (Am. Compl. ¶¶ 441–

448). EPA contends that, even taken as true, Telford's allegations do not describe any bias substantial enough to overcome a presumption of honesty and integrity of agency decision-makers. (Br. in Resp., ECF No. 147, at 9).

Whether Telford has shown sufficient evidence of bias by EPA to state a due process claim continues to be contested by the parties. This is a factual matter to be decided at a later time in this litigation after further record development. At this early stage, and given the liberal standard of Rule 15(a), the Court cannot say this due process claim is so futile as to require denial of leave to amend. Accordingly, leave to amend the complaint to include proposed Count XVII is granted.

## IV. CONCLUSION

For the reasons explained herein, Plaintiff's Motion for Leave to Amend is GRANTED as to Counts V, VI, VII, IX, X, and XVII, and DENIED as to Counts VIII and XV. An appropriate Order follows.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge