IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TELFORD BOROUGH AUTHORITY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.:   12-CV-6548 |
| | : | |
| UNITED STATE ENVIRONMENTAL | : | |
| PROTECTION AGENCY, et al., | : | |
| Defendants. | : | |

MEMORANDUM OPINION

**SITARSKI, M.J.**                                                              February 4, 2021

Pending before the Court is EPA's Motion for Reconsideration (Def.'s Mot. for Recon., ECF No. 156) and Telford's Response and Supplemental Response in Opposition thereto (Pl.'s Resp., ECF No. 157; Pl.'s Supp. Resp., ECF No. 158-1).[1] For the following reasons, Telford's Motion will be GRANTED.

I.   PROCEDURAL/FACTUAL BACKGROUND

The Procedural and Factual Background of this case has been set forth in this Court's Memorandum Opinion dated February 6, 2020 (Memo. Op., ECF No. 154), so I will not repeat it here. The procedural history relevant to the present motion can be summarized as follows:

On August 23, 2019, Telford moved for leave to amend its Complaint. (Pl.'s Mot. for Leave to Amend, ECF No. 143). Telford sought to include substantial additional averments and 14 additional claims. (*See generally* Am. Compl., ECF No. 143-1). On September 23, 2019, EPA filed its Response in Opposition. (Def.'s Resp., ECF No. 147). EPA opposed the addition

---

[1] The Honorable C. Darnell Jones, II referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (Order, ECF No. 160).

of 17 of the additional averments, or portions thereof, and eight of the additional claims in their entirety. (*Id.*). Telford filed its Reply in Support of its Motion on October 8, 2019. (Pl.'s Reply, ECF No. 152). EPA filed its Sur-reply in Opposition to Telford's Motion on October 18, 2019. (Def.'s Sur-reply, ECF No. 153).

On February 6, 2020, I granted Telford's motion as to the additional averments and all but two of the additional claims. (Memo. Op., ECF No. 154; Order, ECF No. 155). On February 21, 2020, EPA filed the instant motion seeking reconsideration of my ruling as to the Amended Complaint's Paragraphs 12.c, 12.d, 287 through 290 and 386, and Counts IX and X. (Def.'s Mot. for Recon., ECF No. 156). On March 5, 2020, Telford filed its Response in Opposition. (Pl.'s Resp., ECF No. 157). On June 25, 2020, Telford filed its Motion for Leave to File a Supplement to its Response in Opposition. (Pl.'s Mot. for Leave to File Supp. Resp., ECF No. 158), to which EPA filed its Response in Opposition on July 1, 2020. (Def.'s Resp., ECF No. 159). Simultaneous with the issuance of this Memorandum Opinion, I am granting Telford's motion to supplement its response. (Order, ECF No. 161).

## II. LEGAL STANDARD

"A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Beard v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-1162, 2016 WL 344300, at *1 (M.D. Pa. Jan. 28, 2016) (citation omitted). Reconsideration motions may not be used to raise new arguments or present evidence that could have been raised previously. *Hill v. Tammac Corp.*, No. 1:05-cv-1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006) (citation omitted). "The purpose of the motion for reconsideration is to correct manifest error of law or fact or to

present newly discovered evidence." *Hernandez v. United States*, 608 F. App'x 105, 109 (3d Cir. 2015) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). "A motion for reconsideration should only address 'factual and legal matters that the Court may have overlooked.'" *Elgert v. Siemens Indus., Inc.*, No. 17-1985, 2019 WL 3976409, at *5 (E.D. Pa. Aug. 22, 2015) (citation omitted). "It is improper that a motion for reconsideration 'ask the Court to rethink what [it] had already thought through—rightly or wrongly.'" *Id.* (citation omitted).

### III. ANALYSIS

In EPA's opposition to Telford's motion for leave to amend, it requested that I strike Paragraphs 12.c, 12.d, 267, 287 through 290, 368, 387 through 389, and 392 through 398, and Counts IX and X because they "inappropriately disclosed details of the parties' settlement negotiations" in violation of Federal Rule of Evidence 408. (Def.'s Resp., ECF No. 147, at 6, 10). Telford responded that only one of these paragraphs, Paragraph 267, "actually references any settlement discussions," and in that case only "because EPA itself referenced" these settlement discussions in its denial of Telford's proposed alternative watershed restoration plan. (Pl.'s Reply, ECF No. 152, at 12-13). It further contended that "neither Telford's request to use an alternative watershed restoration plan nor the request to meet [i.e., the bases for Counts IX and X, respectively] were submitted as part of the settlement discussions between the parties." (*Id.* at 12). I decided that, "[a]s both parties have acknowledged, the alternative watershed plan and requests for meetings have already been submitted to EPA outside of the settlement discussion context, so they are no longer confidential." (Memo. Op., ECF No. 154, at 5 n.4).

EPA moves for reconsideration of my decision as to Paragraphs 12.c, 12.d, 287 through 290 and 368, and Counts IX and X. (Def.'s Mot. for Recon., ECF No. 156). It argues that these paragraphs consist of "allegations of conduct or a statement made during compromise negotiations' about the claims at issue in this suit." (*Id.* at 3 (quoting FED. R. EVID. 408(a)(2))). In addition, it refutes that "Telford submitted the alternative watershed plan to EPA outside the settlement discussion context" because Telford submitted no plan with its 2018 letter to the new Regional Administrator. (*Id.* at 4-5 & n.2). On the contrary, it asserts that Rule 408 prohibits allegations regarding this letter and the 2019 request to meet with the Municipal Ombudsman, including EPA's response to each, because these communications comprise "an 'offer[]' of compromise" and conduct and statements occurring during settlement discussions. (*Id.* at 5 (quoting FED. R. EVID. 408)).

In response, Telford denies that it is, "in any way, seeking to introduce evidence of what EPA did during settlement negotiations." (Pl.'s Resp., ECF No. 157, at 3). It maintains that the paragraphs challenged by EPA "have nothing at all to do with" settlement negotiations. (Pl.'s Resp., ECF No. 157, at 3-4 n.2). Likewise, it accuses EPA of "completely mischaracteriz[ing] the final agency actions being challenged in Counts IX and X of Telford's amended complaint to meet EPA's Rule 408 theory." (*Id.* at 3). It contends that, rather than disclosing confidential settlement communications, these counts "address the agency's arbitrary refusal to consider new information and an alternative restoration plan which, as a matter of law, are allowed to be presented to the agency, regardless of the existence or not of litigation." (*Id.* at 3-4).

Because the parties dispute the characterization of the paragraphs and claims at issue, I set them forth in their entirety:

4

> 12. As part of the TMDL [total maximum daily load] development and reconsideration process, EPA took the following actions:
>
> . . . .
>
> c. Denied Telford's request to utilize an alternative watershed plan in lieu of the Indian Creek TMDL requirements;
>
> d. Denied Telford's request to meet in person to discuss the issues with the Indian Creek TMDL[.]
>
> . . . .
>
> 287. EPA informed Telford on November 6, 2018 that Region 3 is willing to meet with Telford and DEP to explore alternatives to litigation. Despite that assurance, EPA refused to meet with Telford to discuss the Indian Creek TMDL.
>
> 288. EPA has not met with Telford, in person, since 2014.
>
> 289. On May 30, 2019, EPA Headquarters informed Telford that it would not meet to discuss the Indian Creek TMDL. Exhibit N.
>
> 290. While EPA refused to meet with Telford, EPA was actively meeting with other entities within the watershed to discuss how to address issues with this TMDL.
>
> . . . .
>
> 368. Instead of revising the Indian Creek TMDL based on the additional information or meeting with Telford to discuss this new, relevant data, EPA opted to pursue litigation.

The substantive paragraphs of Count IX, for violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), based on EPA's alleged denial of the 2018 alternative watershed restoration plan, read as follows:

> 386. The sole reason EPA's TMDL regulated phosphorus was to reduce alleged excessive plant growth that was presumed to be adversely impacting invertebrate populations.

5

> 387. On January 9, 2018, Telford sought approval of the Indian Creek watershed plan as an alternative to the Indian Creek TMDL that would control excess plant growth.
>
> 388. The Indian Creek watershed plan would increase canopy cover and decrease available light, a proven control method to decrease periphyton growth in streams.
>
> 389. EPA improperly refused to allow Telford to utilize watershed restoration because it did not reduce phosphorus.
>
> 390. By refusing to defer the TMDL to allow for cost-effective, scientifically defensible alternative watershed plans that would address the alleged Indian Creek impairment, EPA acted in a manner that was arbitrary and capricious.

The substantive paragraphs of Count X, for violation of the APA based on EPA's alleged 2019 refusal to meet with Telford, read as follows:

> 392. On March 25, 2019, Telford requested a meeting with the Municipal Ombudsman and the Assistant Administrator for Water to discuss issues with the Indian Creek TMDL, including the use of an alternative watershed plan.
>
> 393. EPA denied Telford's meeting request on May 30, 2019.
>
> 394. EPA's two paragraph denial did not address any of the information presented in the request.
>
> 395. EPA's meeting request denial is contrary to general federalism objectives of encouraging coordination and communication between state and federal governments.
>
> 396. By failing to address any information presented by Telford or provide any substantial basis for the denial, EPA acted in a manner that was arbitrary and capricious.
>
> 397. By electing to pursue litigation instead of meeting with Telford to address the outstanding issues with the TMDL, EPA acted in a manner that was arbitrary and capricious.
>
> 398. EPA's refusal to meet with Telford, while meeting with other entities regarding the same TMDL, is arbitrary and capricious.

EPA asserts that Federal Rule of Evidence 408(a) prohibits inclusion of these allegations in Telford's Amended Complaint.  This rule forbids admission of evidence of "(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim . . . ."  FED. R. EVID. 408(a).  Rule 408 requires only "an apparent difference of view" between the parties "concerning the validity or amount of a claim," not necessarily that the matter has reached "the point of threatened litigation."  *ECEM Euro. Chem. Mktg. B.V. v. Purolite Co.*, 451 F. App'x 73, 77 (3d Cir. 2011) (quoting *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 525 (3d Cir. 1995)).  The court has discretion in determining the applicability of the rule, but, "when in doubt, [it] should err on the side of excluding compromise negotiations."  *Affiliated Mfrs., Inc.*, 56 F.3d at 525 (citing *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987)).  *See also* 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5306 (2d ed.) ("Once a dispute has developed . . . offers made between the parties or their respective attorneys are presumed to be within the scope of Rule 408." (citing *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992))).

A few of the allegations generally set forth the lack of meetings between Telford and EPA.  (Am. Comp., ECF No. 143-1, at ¶¶ 287-88, 290).  The remaining ones describe two specific sets of communications: (1) Telford's January 9, 2018 letter to the new EPA Region III Administrator requesting reconsideration of the alternative watershed restoration plan and EPA's November 6, 2018 response (*Id.* at ¶¶ 12.c, 368, 386-390; *see also* Am. Compl. Exs. D-E, ECF No. 143-2) and (2) Telford's March 25, 2019 letter to the Municipal Ombudsman and Assistant

Administrator of Water requesting a meeting and EPA's May 30, 2019 response.  (Am. Compl., ECF No. 143-1, at ¶¶ 12.d, 289, 392-98; *see also* Am. Compl. Exs. M-N, ECF No. 143-2).

The Court's February 6, 2020 Opinion did not specifically address the allegations of EPA's general refusal to meet with Telford.  (Memo. Op., ECF No. 164; *see also* Am. Comp., ECF No. 143-1, at ¶¶ 287-88, 290).  In these paragraphs, Telford alleges that in 2018 EPA agreed to meet with it for the first time since 2014 "to explore alternatives to litigation" but failed to do so, even though it continued to meet with other entities in the watershed to resolve similar disputes.  (*See also* Am. Comp., ECF No. 143-1, at ¶¶ 287-88, 290).  EPA's agreement to meet constitutes an "offer[ ]" to "attempt[ ] to compromise the claim[s]" against it, as well as "a statement made during compromise negotiations about the claim[s] . . . ."  FED. R. EVID. 408(a)(1)-(2); *see also* 23 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5306 ("'offering' also includes those overtures to compromise that do not qualify as offers under contract law but still convey a desire to resolve the dispute by agreement").  EPA's alleged failure to follow through on this offer while meeting with similarly situated entities constitutes "conduct" during settlement negotiations.  *See* FED. R. EVID. 408(b).  Further, these events occurred while litigation has been pending between the parties.  *See* 23 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5306 (offers between parties in a dispute "presumed" protected under Rule 408).  Accordingly, I find Paragraphs 287, 288 and 290 inadmissible under Rule 408.

The timing of the parties' 2018 and 2019 communications at issue suggests that they also constituted settlement negotiations.  Litigation remained pending during this period and, in fact, had been stayed for the express purpose of allowing settlement negotiations to continue. (Parties' Joint Status Report, ECF No. 76; Order, ECF No. 77).  Telford argues that its requests

8

for reconsideration of the alternative watershed restoration plan and for a meeting occurred "outside of any settlement discussions between the parties" because they presented new information to individuals not previously involved in negotiations, respectively, the new Regional Administrator and the Municipal Ombudsman.  (Pl.'s Resp., ECF No. 157, at 6-7).  However, the fact that these letters involved additional information or individuals uninvolved in prior negotiations does not mean that they are not protected "compromise offers and negotiations" under Federal Rule of Evidence 408.  *See* FED. R. EVID. 408.

By its own language, the January 9, 2018 letter to the Regional Administrator was an attempt by Telford "to resolve our group's differences with EPA."  (Am. Compl. Ex. D, ECF No. 143-2, at 127).  It asked EPA to "reconsider its position" and accept Telford's previously rejected offer of the alternative watershed restoration plan.  (*Id.*).  On November 6, 2018, EPA responded with a summary of the parties' settlement negotiations to that point.  EPA recounted its rejection of the alternative watershed restoration plan and its counterproposal, but noted "that proposal was not accepted" by Telford.  (Am. Compl. Ex. E, ECF No. 143-2, at 129-30).  EPA closed by offering to meet with Telford "to explore alternatives to litigation" and inviting it to have its litigation counsel contact EPA's Office of Regional Counsel.  (*Id.* at 130).

On March 25, 2019, Telford wrote EPA's Municipal Ombudsman and Assistant Administrator of Water seeking their "assistance in resolving a long-standing dispute with EPA Region III . . . ."  (Am. Compl. Ex. M, ECF No. 143-2, at 186).  Telford recounted EPA's rejection of its alternative watershed restoration plan and March 3, 2019 refusal "to meet and discuss" after having previously agreed to do so.  (*Id.* at 187).  It accused EPA of "forc[ing] the communit[y] to litigate" instead of working with it to reach a "common-sense resolution of this matter."  (*Id.*)  Telford asked the Ombudsman and Assistant Administrator to help "to resolve

9

this matter" and to confirm that the alternative watershed restoration plan represented "an acceptable 'trade.'" (*Id.* at 188). In closing, Telford again requested a meeting "to see if a common-sense resolution of this matter can occur." (*Id.*). On May 30, 2019, the Assistant Administrator responded that it had "recently asked the court to return the case to active litigation status because years of settlement discussion" had not resulted in a resolution of the dispute. (Am. Compl. Ex. M, ECF No. 143-2, at 190). It reiterated that "the most appropriate path forward is to reinitiate active litigation" and declined the invitation to meet. (*Id.*).

At its core, the parties' dispute centers around whether Telford must abide by the Indian Creek TMDL. (*See generally* Am. Compl., ECF No. 143-1). Telford's claims assert that it is *ultra vires*, arbitrary and capricious, procedurally improper and unconstitutional. (*Id.* at ¶¶ 327-449). It asks the Court to declare it "to be void and of no effect" and enjoin EPA from enforcing it. (*Id.* at 57-58). In an attempt to resolve this dispute, Telford has proposed that it instead abide by an alternative watershed restoration plan, but EPA has refused. (*Id.* at ¶¶ 266-70, 387, 390, 392). Telford's letter to the incoming Regional Administrator revisited this proposed resolution and asked EPA to "reconsider its position" rejecting it. (Am. Compl. Ex. D, ECF No. 143-2, at 127). EPA's response reiterated its rejection of the settlement offer but allowed for the possibility of further negotiations to resolve the litigation between the parties. (*Id.* at 130). These communications concern Telford's "offering . . . a valuable consideration" – its agreement to abide by the alternative watershed restoration plan in lieu of the TMDL – "to compromise the claim[s]" it brings against EPA, as well as "statement[s] made during compromise negotiations" about the "claim[s]" it brings. FED. R. EVID. 408(a). Because Telford offers these communications "to prove the validity" of its Count IX against EPA, they are inadmissible. *Id.* (Am. Compl., ECF No. 143-1, at ¶¶ 385-90).

10

Similarly, Telford offers its letter to the Municipal Ombudsman and Assistant Administrator and the latter's response as the basis for its Count X against EPA. (Am. Compl., ECF No. 143-1, at ¶¶ 391-98). Like the earlier pair of letters, these ones rehashed the parties' respective settlement positions and discussed whether to meet to continue negotiations or to restart the stayed litigation. (*See generally* Am. Compl. Exs. M-N, ECF No. 143-2). Because the communications included offers to compromise Telford's claims, as well statements made during settlement negotiations about these claims, they are inadmissible under Rule 408. *See* FED. R. EVID. 408.

Telford contends that its January 9, 2018 and March 25, 2019 letters setting forth the alternative watershed restoration plan were not settlement communications because such plans represent an authorized and "common method used by EPA and PADEP [Pennsylvania Department of Environmental Protection] to resolve use impairments under the Clean Water Act." (Pl.'s Resp., ECF No. 157, at 5). It claims that these letters were "*separate* request[s]" containing new information "as expressly allowed by federal law to rectify a prior erroneous decision." (*Id.* at 6-7 (citing 40 C.F.R. §§ 122.62(a)(2), 130.10(c)(7)(iv) (emphasis in original))). Telford also submits a recent exchange of correspondence between the parties in which, according to Telford, EPA "expressly acknowledged" that Telford's request to use an alternative watershed restoration plan and for a meeting with the Municipal Ombudsman "were not part of settlement discussions and that Telford had a right to independently seek TMDL modification . . . ." (Supp. Resp., ECF No. 158-1, at 1-2).

The implementing regulations of the Clean Water Act contemplate modifications to the National Pollutant Discharge Elimination System permits under which TMDLs are administered. *See* 40 C.F.R. § 122.62 ("Modification or revocation and reissuance of permits"). One basis for

modification occurs when "[t]he Director has received new information." *Id.* § 122.62(a)(2).[2] When Telford previously sought reconsideration of the TMDL – in 2009, 2010, 2014 and 2019 – it normally directed its request and purportedly new information to the Director of Science and Technology or the Director of the Water Protection Division, not the Regional Administrator or the Municipal Ombudsman.[3] (Am. Compl. Exs. F-H, J, L, ECF No. 143-2). Further, these requests generally lack the references to the parties' "disputes" and "differences," "positions" and "proposals," settlement negotiation history, future meetings, and continued litigation present in the January 9, 2018 and March 25, 2019 letters and EPA's responses thereto. (*Compare id.* Exs. F-H, J, L, ECF No. 143-2, *with id.* Exs. D-E, M-N, ECF No. 143-2).

Finally, Telford contends that EPA's acknowledgement in its June 19, 2020 email that cessation of settlement negotiations "does not impair [Telford's] ability to petition EPA" amounts to an admission that "Telford's request to utilize a watershed restoration plan (Count IX) and to meet with the Municipal Ombudsman (Count X) were clearly within Telford's right

---

[2] Telford also cites 40 C.F.R. Sections 130.2(i) and 130.10(c)(7)(iv) as its regulatory bases for proposing the alternative watershed restoration plan in lieu of the TMDL. (Pl.'s Resp., ECF No. 157, at 5, 7). Section 130.2(i) provides the definition for a TMDL. The definition allows for making "wasteload allocations . . . less stringent" where "practicable," but does not explain the process. 40 C.F.R. § 130.2(i). 40 C.F.R. Section 130.10(c)(7)(iv) does not exist. 40 C.F.R. Section 130.10(d)(7)(iv) provides that "[e]ach state shall provide documentation to the Regional Administrator to support the state's determination" of the waters to include on its water impairment lists, including "[a]ny other information requested by the Regional Administrator that is reasonable or necessary to determine the adequacy of a state's lists." 40 C.F.R. § 130.10(d)(7)(iv). However, I fail to see how this section applies to Telford's *sua sponte* letter to the incoming Regional Administrator or its subsequent request for a meeting with the Municipal Ombudsman.

[3] Telford's January 22, 2019 reconsideration request was directed to both the Director of the Water Protection Division and the Regional Administrator. (Am. Compl. Ex. L, ECF No. 143-2). Telford directed its September 14, 2010 letter to the Assistant Administrator of EPA's Office of Air and Radiation and to the Deputy Administrator, but its primary purpose appears to have been to "initiate an independent review of the OST [Office of Science and Technology] that [Telford] believe[d] clearly constitute[d] intentional scientific misrepresentation, malfeasance and fabrication of regulatory requirements." (Am. Compl. Ex. I, ECF No. 143-2).

and authority, outside of any settlement discussions." (*See* Supp. Resp., ECF No. 158-1, at 2; Supp. Resp. Ex. 2, ECF No. 158-2). As an initial matter, I agree with EPA that this email summarizing the parties' recent settlement discussions is itself inadmissible under Rule 408. Telford dismisses as "hyperbole" EPA's assertion that admitting the letters to the incoming Regional Administrator and Municipal Ombudsman "would strike at the heart of the policy justification behind Rule 408," but Telford's attempted use of this confidential settlement discussion summarizing prior confidential settlement discussions to bolster its claims highlights the necessity of upholding the rule. (Pl.'s Resp., ECF No. 157, at 7 (quoting (Def.'s Mot. for Recon., ECF No. 156))). Moreover, even if Rule 408 did not render this email inadmissible, its acknowledgment that Telford may continue to petition EPA outside of settlement discussions – as it did in 2009, 2010, 2014 and 2019 – does not amount to a concession that the January 9, 2018 and March 25, 2019 letters were such communications.

The Court's prior ruling allowing the allegations at issue constituted a manifest legal error that I now correct. *See Hernandez v. United States*, 608 F. App'x at 109 (citation omitted). Paragraphs 12.c, 12.d, 267, 287 through 290, 368, 387 through 389, and 392 through 398, and Counts IX and X are stricken from the Amended Complaint.

### IV. CONCLUSION

For the reasons explained herein, Plaintiff's Motion is GRANTED. An appropriate Order follows.

BY THE COURT:

　　/s/ Lynne A. Sitarski　　
LYNNE A. SITARSKI
United States Magistrate Judge

13